1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7   CRAIG DEWEY WILLIAMS,                    Case No.: 12-cv-6179-YGR
8            Plaintiff,                      **ORDER GRANTING PLAINTIFF'S MOTION FOR
                                             SUMMARY JUDGMENT AND DENYING
9        vs.                                 DEFENDANT'S CROSS-MOTION FOR
                                             SUMMARY JUDGMENT**
10
11  CAROLYN W. COLVIN, Commissioner of
    the Social Security Administration,
12
13           Defendant.
14
15          On May 13, 2013, Plaintiff Craig Dewey Williams filed this action seeking judicial review of
16  Administrative Law Judge ("ALJ") Benjamin F. Parks' decision that he is not disabled under
17  sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act.  Pending before the Court are
18  the parties' cross-motions for summary judgment.  (Dkt. Nos. 18, 22, 23.)  Plaintiff argues that the
19  ALJ committed four errors: (i) the ALJ failed to consider Plaintiff's panic disorder in his Step Two
20  evaluation and instead found that Plaintiff had a severe impairment Plaintiff did not claim as a basis
21  of disability; (ii) the ALJ determined that Plaintiff's impairments did not meet any listed impairments
22  without specifically identifying the factors for certain listed impairments and analyzing whether
23  Plaintiff demonstrated those factors; (iii) the ALJ's determination of Plaintiff's Residual Functional
24  Capacity was not supported by substantial evidence because the ALJ did not properly consider
25  medical opinion evidence and improperly discredited Plaintiff's allegations of disabling symptoms;
26  and (iv) the ALJ's Step Five determination that Plaintiff can perform specific work was not
27  supported by substantial evidence and was based on legal error.  In opposition, Defendant
28  Commissioner Carolyn W. Colvin contends that the ALJ made no reversible errors of law and that
    substantial evidence supported the ALJ's decision.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on July 31, 2009, alleging that he had been disabled since January 15, 2008.  (Record at 14.)  These claims were first denied on December 10, 2009 and upon reconsideration on June 28, 2010.  (*Id.*)  On July 9, 2010, Plaintiff requested a hearing before an ALJ.  (*Id.*)  On January 11, 2011, Administrative Law Judge Benjamin F. Parks held a hearing at which Plaintiff appeared with counsel and testified.  (*Id.*)  Robert A. Raschke, an impartial vocational expert, also testified.[1]  (*Id.*)  On May 24, 2011, the ALJ issued a decision in which he determined that Plaintiff was non-disabled within the meaning of the Social Security Act and denied Plaintiff's application for disability benefits and supplemental security income.  (*Id.*)  On October 2, 2012, the Appeals Council declined to review the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at 1–4.)  Plaintiff now appeals from that decision.  (Dkt. No. 1.)

## II.   APPLICABLE LEGAL STANDARDS

This Court has jurisdiction under 42 U.S.C. section 405(g).  The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  It is "more than a mere scintilla but less than a preponderance."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Where the evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ.  *Burch*, 400 F.3d at 679.

The SSA uses a five-step sequential framework to determine whether a claimant is disabled.

---

[1] Although the ALJ's decision notes that an impartial medical expert named Sergio Bello testified, the transcript of proceedings does not contain any such testimony, nor does the record contain any report from or reference to Dr. Bello.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity.

2    20 C.F.R. §§ 404.1520(b), 416.920(b).  A person is involved in substantial work activity if he

3    engages in work that involves significant physical or mental activities.  20 C.F.R. §§ 404.1572(a),

4    416.972(a).  Gainful work activity is defined as "work usually done for pay or profit," regardless of

5    whether the claimant receives a profit.  20 C.F.R. §§ 404.1572(b), 416.972(a).  If the claimant is

6    engaged in substantial gainful activity, he is not disabled.  If the claimant does not engage in

7    substantial gainful activity, the ALJ proceeds to Step Two of the evaluation.

8        At Step Two, the ALJ must determine whether the claimant has an impairment or

9    combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe"

10   impairment is defined in the regulations as one that significantly limits an individual's ability to

11   perform basic work activities.  If the claimant does not have a severe impairment or combination of

12   impairments, he is not disabled.  If the claimant does have a severe impairment or combination of

13   impairments, the ALJ proceeds to Step Three.

14       At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's

15   impairment or combination of impairments "meets or equals" the criteria of an impairment listed in

16   20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d),

17   416.925, 416.926.  If the claimant's impairment or combination of impairments meets the criteria of

18   a listing and the duration requirement, the claimant is disabled.  20 C.F.R. §§ 404.1509, 416.909.  If

19   the impairment or combination of impairments does not meet the criteria of a listing or does not meet

20   the duration requirement, the ALJ proceeds to the next step.

21       Before reaching Step Four in the sequential evaluation, the ALJ must determine the

22   claimant's residual functional capacity ("RF Capacity").  20 C.F.R. §§ 404.1520(e), 416.920(e).  A

23   claimant's RF Capacity consists of his ability to engage in physical and mental work activity on an

24   ongoing basis, in spite of any limitations from impairments.  The ALJ considers both severe and non-

25   severe impairments in determining the claimant's RF Capacity.  20 C.F.R. §§ 404.1520(e), 404.1545,

26   416.920(e), 416.945.

27       At Step Four, the ALJ must determine whether the claimant has the RF Capacity to perform

28   past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant has such capacity, he is

3

1  not disabled.  If the claimant is unable to do past relevant work or has no past relevant work, the ALJ

2  proceeds to the final step in the sequential evaluation.

3          At Step Five, the ALJ considers the claimant's RF Capacity, age, education, and work

4  experience in determining whether the claimant can perform any other work besides past relevant

5  work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant can perform other work, he is not

6  disabled.  If the claimant cannot perform other work and fulfills the durational requirement, he is

7  disabled.

8  **III.    ADMINISTRATIVE RECORD AND FRAMEWORK**

9          **A.    The ALJ's Five-Step Decision**

10          The ALJ applied the five-step sequential analysis to determine whether Plaintiff was disabled

11  and eligible for disability insurance benefits.  (Record at 14–24.)

12          At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity

13  since January 15, 2008, the alleged disability onset date.  (Record at 16.)  Specifically, the ALJ

14  determined that Plaintiff "worked after the alleged disability onset date but this work activity did not

15  rise to the level of substantial gainful activity."  (*Id.*)

16          At Step Two, the ALJ determined that Plaintiff "has the following severe impairments: HIV,

17  Depression, and Drug and Alcohol Abuse in Early Remission."  (Record at 16.)  The ALJ thus

18  proceeded to Step Three.

19          At Step Three, the ALJ found that Plaintiff did not have "an impairment or combination of

20  impairments that meets or medically equals one of the listed impairments" under the regulations.

21  (Record at 16.)  Specifically, the ALJ "considered all of the claimant's impairments individually and

22  in combination but can find no evidence that the combined clinical findings from such impairments

23  reach the level of severity contemplated by the Listings."  (*Id.*)  Accordingly, the ALJ stated that

24  disability could not be established on the medical facts alone.  (*Id.* at 16–17.)  The ALJ also

25  considered Plaintiff's mental impairments both singly and in combination, and determined that again,

26  Plaintiff's impairments did not rise to the level of a listed impairment for two listed impairments:

27  12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders).  The ALJ concluded that

28  medical evidence and the Plaintiff's testimony established only "mild restrictions in the activities of

United States District Court
Northern District of California

4

daily living, moderate difficulties in maintaining social functioning, and mild difficulties maintaining concentration, persistence, or pace." (*Id*. at 17.)

As a result, before proceeding to Step Four, the ALJ made a determination regarding Plaintiff's RF Capacity, considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required by 20 C.F.R. sections 404.1529 and 416.929, and SSRs 96–4p and 96–7p.  (Record at 18.) The ALJ noted that when considering Plaintiff's symptoms, he "must follow a two-step process." (*Id*.)   First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id*.)  "Second, once an underlying physical . . . impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*.)  If the claimant's stated intensity, persistence, or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.  (*Id*.)

Ultimately, the ALJ determined that Plaintiff had the RF Capacity to perform the full range of light work as defined in 20 C.F.R. sections 404.1567(b) and 416.967(b) subject to certain limitations. Specifically, Plaintiff:

> "[C]annot do occasional stooping, crawling, and bending; only has mild limitations for completing activities of daily living; moderate limitations for social functioning; able to get along with coworkers and the general public; mild limitations in concentration, persistence, and pace; has difficulty with detailed and complex instructions 40% to 50% of the time; can complete simple repetitive tasks and maintain a normal production schedule for these jobs; can do one, two, or three step jobs; and has no episodes of decompensation." (Record at 17–18.)

In reaching this conclusion, the ALJ considered Plaintiff's testimony regarding his symptoms and limitations, as well as the medical evidence of record.  The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged

United States District Court
Northern District of California

symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the Plaintiff's ability do light work, subject to the specified restrictions that formed the ALJ's RF Capacity determination.  (Record at 19.)

In making his RF Capacity determination, the ALJ noted that Plaintiff's described daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (Record at 19.)  Specifically, the ALJ noted that "the claimant can clean his room, wash dishes, do laundry, buy groceries, watch TV, use a computer, read, walk, and keep appointments" and that Plaintiff had testified that he was able to manage his own finances.  (*Id*.)  The ALJ also found that Plaintiff had collected unemployment benefits, "which indicates he had the capacity to work."  (*Id*.)  The ALJ further noted that Plaintiff had not been compliant in taking his medications, concluding that "the symptoms may not have been as limiting as the claimant has alleged."  In addition, Plaintiff had exhibited no pain or discomfort at the hearing, a fact the ALJ accorded "some slight weight" in evaluating Plaintiff's credibility.  (*Id*.)

The ALJ also considered the medical opinions of record and concluded that the medical evidence did not support Plaintiff's allegation of disabling symptoms and limitations.  (Record at 19.)  First, the ALJ evaluated the opinion of Dr. Mathur, a State agency medical consultant who reviewed Plaintiff's medical records.  (*Id*.)  Dr. Mather, however, did not review any medical source statements from Plaintiff's treating physician.  (Decl. of H. Hoying, Ex. A at 8.)  Dr. Mathur determined that Plaintiff is "able to lift and carry 20 pounds occasionally and 10 pounds frequently," that "he can stand-walk and sit for about six hours each in an eight-hour workday and has unlimited push-pull capabilities."  (*Id*. at 19–20.)  The ALJ stated that not only was Dr. Mathur's opinion supported by the medical evidence of record, but that Dr. Mathur is "well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations."  (*Id*. at 20.)  Thus, the ALJ accorded Dr. Mathur's opinion "great weight."  (*Id*.)

The ALJ next evaluated the opinion of Dr. Chen, a State agency consultative examiner.  (Record at 20.)  Dr. Chen opined that Plaintiff had different limitations than those delineated by Dr. Mathur.  (*Id*. at 19–20.)  However, because the ALJ determined that the balance of medical evidence

supported Dr. Mathur's conclusions regarding Plaintiff's capabilities, the ALJ accorded "reduced weight" to Dr. Chen's opinion.  (*Id*. at 20.)

Third, the ALJ evaluated the opinion of Plaintiff's treating physician, Dr. Baum, a physician at San Francisco General Hospital Ward 86 who had treated Plaintiff since April 2009.  (Record at 449.)  In a narrative statement from November of 2009, Dr. Baum opined that Plaintiff was "unable to seek or maintain any type of employment due to chronic symptoms of HIV."  (*Id*. at 20.)  He explained that Plaintiff's "chronic symptoms of HIV include full body rashes that are highly resistant to treatment; chronic Staph infections; chronic ulcerating dermatitis, eczema, and abscesses; chronic recurring herpes simplex virus infections; anal dysplasia; bladder infections; gastrointestinal reflux disease; vasculitis; chronic lower back pain, lower extremity swelling, and joint pain resulting in decreased range of movement; chronic fatigue and decreased endurance; and diarrhea with occasional fecal incontinence."  (*Id*. at 449.)  Dr. Baum stated that Plaintiff's symptoms had resulted in "marked functional limitations."  (*Id*.)  For example, he noted that Plaintiff was "unable to fully take care of his personal needs on a consistent basis . . . ," and was "dependent on Project Open Hand to provide him with meals . . .." (*Id*.)  In Dr. Baum's opinion, Plaintiff was "totally unprepared to sustain the physical stamina, social interactions, ongoing responsibilities, and the routine and pace required in any vocational setting[.]"  (*Id*. at 450.)

Dr. Baum provided several additional written medical statements concerning Plaintiff's physical and mental status.  On June 2, 2010, Dr. Baum completed a Medical Evaluation Form in which he indicated that while Plaintiff did not "appear chronically ill," Plaintiff did appear visibly fatigued due to his HIV and was substantially limited in terms of lifting, carrying, standing, walking, and sitting.  (Record at 546.)  On December 21, 2010, Dr. Baum provided a narrative addendum to his original Medical Source Summary from November 2009 in which he reiterated his opinion that Plaintiff is "unable to work due to chronic symptoms of HIV, Major Depressive Disorder, and Panic Disorder" and described Plaintiff's worsening symptoms related to Plaintiff's HIV infection and mental illness.  (*Id*. at 598.)  Dr. Baum provided two further addenda, dated December 8, 2011 and May 15, 2012, in which he again stated his opinion that Plaintiff was unable to work due to his chronic, severe, and worsening HIV symptoms, major depressive disorder, and panic disorder.  (*Id*.

1   at 636–40.) [2]

2       The ALJ reviewed Dr. Baum's opinions and found them unpersuasive for three reasons.

3   First, the ALJ stated that there were inconsistencies in Dr. Baum's opinions.  Specifically, the ALJ

4   found that Dr. Baum had contradicted himself by stating that Plaintiff could lift/carry 10 pounds

5   occasionally and 5 pounds frequently in June 2010, after he had opined that Plaintiff was unable to

6   carry or lift anything in November 2009.  The ALJ also found an inconsistency in Dr. Baum's

7   opinions concerning Plaintiff's ability to complete daily living activities independently.  Second, the

8   ALJ found that Plaintiff's work history undermined Dr. Baum's contention that Plaintiff was unable

9   to function independently.  Last, the ALJ noted that Plaintiff had "gaps in his treatment."  (Record at

10   21.)  Ultimately, the ALJ determined that Dr. Baum's opinions were "largely unpersuasive" and

11   accorded them "little weight."  (*Id*.)

12       The ALJ also accorded "little weight" to the medical opinions of Dr. Johnson, a psychiatrist

13   who examined Plaintiff on March 10, 2011.  Dr. Johnson provided a narrative report documenting

14   Plaintiff's social, medical, and psychiatric history, current daily functioning, and mental status.  In

15   that report, Dr. Johnson included a medical source statement in which he explained why, in his

16   opinion, Plaintiff would have marked to extreme difficulties functioning in a workplace setting.

17   (Record at 21.)  Dr. Johnson also provided a completed form detailing Plaintiff's mental ability to do

18   work-related activities.  On that form, Dr. Johnson again noted that Plaintiff had marked to extreme

19   mental limitations.  (*Id*. at 21, 620–21.)  The ALJ found that Dr. Johnson's opinion warranted only

20   "little weight" for two reasons:  Dr. Johnson had only evaluated the Plaintiff one time, and the ALJ

21   found an inconsistency between Dr. Johnson's narrative report and his completed form.  (*Id*. at 21–

22   22.)

23       Taking into account the medical evidence of record and the relative weights of medical

24   opinions, as well as Plaintiff's testimony, the ALJ determined that Plaintiff had an RF Capacity to

United States District Court
Northern District of California

25   _____

26   [2] These addenda were added to the Record in May of 2012 and thus, formed no part of the ALJ's
     decision, which was issued on May 24, 2011.  However, Plaintiff submitted these materials to the

27   Appeals Council in conjunction with his request that the Council review the ALJ's decision.  The
     Appeals Council incorporated these documents into the record, considered them, and decided to

28   deny Plaintiff's request for review.  (Record at 1, 6.)  Accordingly, this Court may properly consider
     this evidence.  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing *Ramirez v. Shalala*,
     8 F.3d 1449 (9th Cir. 1993)).

perform light work subject to specified limitations.  Having made that determination, the ALJ proceeded to Step Four and evaluated the Plaintiff's documented vocational background, his testimony, and the testimony of a vocational expert, and determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.

At Step Five, the ALJ held that Plaintiff was not under a disability as defined in the Social Security Act from January 15, 2008 to the date of the ALJ's decision.

**B.      The ALJ's Four Purported Errors**

In his motion for summary judgment, Plaintiff argues that the ALJ committed four errors. First, Plaintiff argues that the ALJ failed to consider Plaintiff's Panic Disorder in his Step Two analysis and inappropriately found that Plaintiff suffers from a disability Plaintiff did not allege. (Mot. at 4–5.)  Second, Plaintiff argues that the ALJ erred in failing to consider all of Plaintiff's claimed impairments in his Step Three analysis.  Specifically, Plaintiff contends that the ALJ failed to consider whether Plaintiff met the requirements for two listed impairments: Listing 14.08(K) (Repeated Manifestations of HIV Infection) and Listing 12.06 (Anxiety-Related Disorders), and that the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.04 (Affective Disorders) was unsupported by evidence.  (*Id.* at 6.)  Third, Plaintiff argues that the ALJ's determination of Plaintiff's RF Capacity was not supported by substantial evidence because the ALJ failed to accord proper weight to medical opinions.  (*Id.* at 8, Reply at 4.)  In addition, Plaintiff contends that the ALJ's adverse credibility determination as to his testimony was unsupported by substantial evidence. Finally, Plaintiff argues that the ALJ's reliance on testimony from the vocational expert was in error because the vocational expert's opinion was predicated on a hypothetical that did not reflect Plaintiff's RF Capacity as determined by the ALJ.  (Mot. at 19.)

**IV.    DISCUSSION**

Because the resolution of Plaintiff's third purported error – whether the ALJ's RF Capacity determination was supported by substantial evidence – bears on Plaintiff's other issues on appeal, the Court considers this issue first.

United States District Court
Northern District of California

9

**A.  The ALJ's RF Capacity Evaluation**

At Step Four of the ALJ's sequential analysis, the ALJ determined that Plaintiff had the RF Capacity to perform light work subject to certain specified restrictions.[3]  In making his RF Capacity decision, the ALJ accorded "little weight" to the opinions of Plaintiff's treating physician, Dr. Baum, and examining psychiatrist Dr. Johnson.  These two physicians both opined that Plaintiff's impairments were so severe that he was unable to work.  (Record at 598, 618–22.)  The ALJ also only partially credited Plaintiff's allegations of disabling symptoms and limitations.

Plaintiff argues that the ALJ erred at all three junctures:  discrediting Dr. Baum's opinion, discrediting Dr. Johnson's opinion, and discrediting Plaintiff's testimony.   The Court addresses each argument in turn.

**1.    Dr. Baum**

Plaintiff argues that the ALJ erred by assigning "little weight" to the opinion of Plaintiff's treating physician Dr. Baum.  (Mot. at 14–20.)  Upon review of the record and the ALJ's decision, this Court finds that the ALJ's decision to accord "little weight" to Dr. Baum's opinion was not supported by substantial evidence.

The law is clear in this circuit that the ALJ must defer to the treating doctor's opinion, even if controverted by another doctor, unless the ALJ makes findings setting forth specific, legitimate reasons for rejecting it that are based on substantial evidence in the record.  *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012);  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 92 (9th Cir. 2009); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  Importantly, the ALJ must do more than

---

[3] The ALJ found that Plaintiff cannot do occasional stooping, crawling, and bending; only has mild limitations for completing activities of daily living; moderate limitations for social functioning; able to get along with coworkers and the general public; mild limitations in concentration, persistence, and pace; has difficulty with detailed and complex instructions 40% to 50% of the time; can complete simple repetitive tasks and maintain a normal production schedule for these jobs; can do one, two, or three step jobs; and has no episodes of decompensation.  (Record at 17–18.)

1   offer his conclusions – he must set forth his own interpretations and explain why they, rather than the

2   doctor's, are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

3          Here, the ALJ identified three reasons for discrediting Dr. Baum's opinion:  (1) there were

4   inconsistencies in Dr. Baum's medical opinions; (2) Dr. Baum's opinion that Plaintiff could not work

5   was contradicted by Plaintiff's 2010 employment with the U.S. Census Bureau; and (3) Plaintiff had

6   gaps in his treatment with Dr. Baum.  (Record at 21.)  After reviewing the ALJ's decision and the

7   record as a whole, the Court finds that these reasons are not "specific, legitimate" reasons, nor are

8   they based on "substantial evidence in the record."

9          First, the Court finds that Dr. Baum's alleged inconsistencies are not supported by the record

10   evidence.  The ALJ claimed that there was a discrepancy between Dr. Baum's June 2010 and

11   November 2009 statements, but the ALJ arrived at this conclusion based on an incomplete reading of

12   the record.  The ALJ noted that in November 2009, "the doctor stated that the claimant cannot lift or

13   carry anything," and concluded that this is inconsistent with Dr. Baum's June 2010 statement that

14   "the claimant can lift and carry five pounds frequently and ten pounds occasionally."  (Record at 21.)

15   However, Dr. Baum's November 2009 statement actually stated that Plaintiff "is unable to lift or

16   hold anything for prolonged periods of time."  (*Id*. at 449.)  Read in full, Dr. Baum's statements are

17   not immediately contradictory; "prolonged periods of time" denotes a different value than the terms

18   "frequently" or "occasionally."  Thus, there is no immediate contradiction in Dr. Baum's statements.

19          Likewise, Dr. Baum's opinions concerning Plaintiff's ability to perform activities of daily

20   living, which were rendered over a period of eighteen months, demonstrate no inconsistency.  The

21   ALJ noted that in June of 2010, Dr. Baum stated that the "claimant can do most activities of daily

22   living independently."  The ALJ found that statement inconsistent with two other statements from

23   Dr. Baum:  in December of 2010 "the doctor said he has marked limitations in his activities of daily

24   living," and in November 2009, the doctor noted that "claimant cannot complete household chores."

25   (Record at 21.)  The Court finds that these statements, considered in light of the medical record as a

26   whole, admit of no appreciable inconsistency.  They reflect only that Plaintiff's condition changed

27   over time, and as Plaintiff's treating physician, it was proper for Dr. Baum to document any such

28   changes.

11

Indeed, a review of Dr. Baum's four narrative statements reveals undeniable consistency. In Dr. Baum's medical source summary and all three addenda – November 2009, December 2010, December 2011, and May 2012 – Dr. Baum confirms his diagnoses, describes the same symptoms, and opines that Plaintiff was unable to work due to the chronic symptoms of HIV infection and mental illness. In fact, to the extent the substance of these letters changes, it is because Plaintiff's symptoms *worsen* over time. For example, in 2009, Dr. Baum stated that Plaintiff suffered from chronic Staph infections. (Record at 449.) In his 2011 letter, Dr. Baum stated that Plaintiff "continues to experience numerous MRSA staph infections requiring surgical treatment." (*Id*. at 639.) And in 2012, Dr. Baum wrote that Plaintiff "continues to experience numerous MRSA staph infections requiring hospitalizations." (*Id*. at 636.) Moreover, Dr. Baum's opinions as documented in his narrative statements are corroborated by contemporaneous medical evidence. (*Compare id*. at 449 *with* 532, 535; *compare id*. at 589 *with* 557, 560, 562, 564, 579.) The ALJ's suggestion that Dr. Baum's opinions are inconsistent is therefore contrary to the record. *See also Orn*, 495 F.3d at 634 (treating physicians' opinions documenting claimant's "progressively worsening condition" were consistent with the record as a whole).

The ALJ's reliance on Plaintiff's short-lived employment with the U.S. Census Bureau to discredit Dr. Baum's opinion is similarly misplaced. In light of the record evidence, Plaintiff's failed attempt to work for the U.S. Census Bureau does not establish that Plaintiff is capable of "functioning independently," as the ALJ concluded. (Record at 21.) Plaintiff testified that his symptoms so severely impacted his ability to work that he was unable to continue working after a brief period of time even though the position permitted him to "work your own hours, part time." (*Id*. at 47–48.) The fact that Plaintiff tried to work for a short period of time and, due to his impairments, failed does not contradict Dr. Baum's opinion that Plaintiff was disabled. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). Indeed, Plaintiff's demonstrated failure to maintain a job that enabled him to work only part-time from home supports Dr. Baum's opinion that Plaintiff "has been unable to manage the daily routines, responsibilities, social interactions, concentration, persistence, or pace required in a work setting since April 2009, and will continue to face [the same] symptoms and resulting functional limitations for at least an additional 18 to 24

months." *See Lingenfelter*, 504 F.3d at 1039; Record at 599. Thus, Plaintiff's failed attempt to work for the U.S. Census Bureau does not constitute a legitimate reason based on substantial evidence for the ALJ's decision to discredit Dr. Baum's opinions.

Finally, the ALJ noted that the Plaintiff "ha[d] gaps in his treatment." (Record at 21.) Precisely how this bears on the credibility of Dr. Baum's opinions is unclear, as the ALJ did not set forth any interpretation of facts underlying this conclusion. Nonetheless, the Court finds that again, the ALJ's stated reason is neither specific nor legitimate and fails to be based on substantial evidence. Taking the record evidence as a whole, it is clear that Dr. Baum treated Plaintiff from August of 2009 to the date of decision. The "gaps" identified by the ALJ do not relate to Dr. Baum's treatment of Plaintiff, nor does the cited evidence suggest that there were any repeated gaps in treatment. The ALJ relied on one record entry dated April 13, 2010, wherein a physician by the name of Dr. Baker noted that the last time he, Dr. Baker, had seen Plaintiff was in October of 2009. (*Id*. at 21, 589). This evidence establishes that there is only one gap in treatment relating to Plaintiff's interactions with one of many doctors, not that there were multiple gaps. In addition, the cited evidence does not undermine Dr. Baum's opinion insofar as the alleged gap in treatment concerned only Plaintiff's treatment with Dr. Baker. Other record evidence establishes that during this "gap," Plaintiff actually continued to seek and receive treatment from Dr. Baum and other medical sources. (*See id*. at 465–89, 594–597.) Thus, the ALJ's stated reason is not a legitimate one, nor is it based on substantial evidence in the record – to the contrary, the record disproves the ALJ's stated reason for discrediting Dr. Baum's opinions.

The Ninth Circuit "[has] made it clear that the medical opinions of a claimant's treating physician[] are entitled to special weight and that, if the ALJ chooses to disregard them, he must set forth specific, legitimate reasons for doing so, and this decision itself must be based on substantial evidence." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (quotations omitted)). In this case, the Court finds that none of the ALJ's stated reasons for rejecting Dr. Baum's opinions meet this standard.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. Dr. Johnson

In determining Plaintiff's RF Capacity, the ALJ also accorded little weight to the opinion of examining psychiatrist, Dr. Johnson.  Dr. Johnson examined Plaintiff and provided a five-page, single-spaced narrative account of his evaluation and findings and a three-page Medical Source Statement form.  Ultimately, Dr. Johnson opined that Plaintiff's psychological impairments profoundly compromised Plaintiff's ability to work.  (Record at 21, 615–22.)  The ALJ discredited Dr. Johnson's opinion for two reasons: first, the ALJ found that there were inconsistencies in Dr. Johnson's findings and second, the doctor evaluated Plaintiff only one time.  (*Id*. at 21–22.)

In order to invalidate the opinion of an examining physician, the ALJ was required to state specific and legitimate reasons that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).  After reviewing the ALJ's decision and the record evidence as a whole, the Court finds that the ALJ's documented reasons do not meet this standard.

The ALJ stated that Dr. Johnson's evaluation documents are "standard forms processed by the doctor, which do not have any consistency."  (Record at 21.)  As an initial matter,  Dr. Johnson submitted far more than a "standard form" that he simply "processed" – Dr. Johnson provided a five-page, single-spaced narrative account of his examination of Plaintiff.  In that narrative report, Dr. Johnson discussed Plaintiff's social, medical, and psychiatric history, and Plaintiff's current daily functioning.  (*Id*. at 615–16.)  Dr. Johnson also outlined the results of Plaintiff's mental status examination and the resultant diagnoses before providing a statement detailing his ultimate findings on Plaintiff's ability levels.  In addition, the ALJ's claim that Dr. Johnson's two reports "do not have any inconsistency" is belied by the record.  These two reports are indisputably consistent.  (*Compare id*. at 618 *with* 620 (describing Plaintiff's demeanor, anxiety, ability to follow instructions, complete numerical tasks).)  Indeed, Dr. Johnson cross-referenced between the two reports.  (*See id*. at 620–21.)  The ALJ identified only one specific inconsistency:  Dr. Johnson in his narrative report stated that claimant has "marked to extreme difficulties when **communicating** with supervisors" and in his Medical Source Statement form indicated that "claimant has extreme limitations in **interacting** with supervisors."  (*Id*. at 22 (emphasis supplied).)  But again, these statements are not inconsistent.  "Communicating" and "interacting," though loosely overlapping, are different behaviors and

Plaintiff could reasonably have extreme limitations in one and "marked to extreme" limitations the other. The ALJ's first reason for discrediting Dr. Johnson's opinion is therefore neither legitimate nor based on substantial evidence.

The only remaining reason to uphold the ALJ's rejection of Dr. Johnson's testimony is the ALJ's observation that Dr. Johnson had examined Plaintiff only one time. (Record at 21.) The ALJ's decision lacks any substantive explanation as to why Dr. Johnson's single evaluation of Plaintiff is grounds for according to Dr. Johnson's opinion only "little weight." The fact of a one-time examination, without any analysis or assessment as to the nature and quality of that examination, is not a sufficient basis for the ALJ's decision to reject Dr. Johnson's opinion. By definition, an examining physician will have often evaluated a claimant only one time. Taking the ALJ's stated reason to its logical conclusion would have the result of discrediting examining physician opinions practically as a matter of definition. This cannot be so. The fact that Dr. Johnson evaluated Plaintiff only one time, without more, is not a legitimate reason for discounting his opinions.

Accordingly, the Court finds that the ALJ's decision to accord only "little weight" to Dr. Johnson's opinion was in error.

### 3.   The ALJ's Credibility Finding

The ALJ determined that Plaintiff's claim of complete disability, specifically his claims concerning the intensity, persistence, and limiting effects of his symptoms, was not credible. (Record at 19.) In light of this Court's findings above and a review of the record evidence, the Court finds that the ALJ's adverse credibility determination was improper.

The ALJ cannot discredit Plaintiff's testimony as to subjective symptoms without offering "specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). All such reasons must also be supported by substantial evidence in the record as a whole. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.1989)). In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities,

1   his work record, and testimony from physicians and third parties concerning the nature, severity, and

2   effect of the symptoms of which he complains. *See Smolen*, 80 F.3d at 1284 (citations omitted). If

3   the ALJ's finding is supported by substantial evidence, the court "may not engage in second-

4   guessing." *Id*.

5          Here, the ALJ's adverse credibility determination turned in large part on the medical

6   evidence of record and his assessment of how strongly opinions of medical experts corroborated

7   Plaintiff's claimed degree of limitation. (Record at 18–22.) Specifically, the ALJ found that the

8   objective medical evidence of record "fail[s] to provide strong support for the claimant's allegations

9   of disabling symptoms and limitations." (*See also, id*. at 19 ("[T]he objective medical evidence does

10   not provide a basis for finding limitations greater than those determined in this decision"; "the

11   medical findings do not support the existence of limitations greater than those reported above.").)

12   This conclusion was therefore based on the ALJ's decision to accord only "little weight" to the

13   opinions of Drs. Baum and Johnson.

14          As explained above, the ALJ's decision to accord only "little weight" to these doctors'

15   opinions was error. Because the ALJ's decision to discredit Dr. Baum's and Dr. Johnson's opinions

16   was based on legal error, this Court credits the physicians' opinions "as a matter of law." *Lester v.*

17   *Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

18   1989)). Crediting these physicians' opinions as true drastically alters the landscape of record

19   medical evidence. Indeed, crediting Dr. Baum's and Dr. Johnson's opinions produces a record that

20   supports Plaintiff's claimed degree of impairment. Both doctors concluded that Plaintiff experienced

21   limitations so severe that Plaintiff was unable to sustain work activity and would continue to be

22   unable to do so for at least the next year. (*See* Record at 450, 619.) Thus, the ALJ's stated basis for

23   rejecting Plaintiff's claimed degree of impairment – that the medical evidence of record "fails to

24   provide strong support for Plaintiff's allegations of disabling symptoms and limitations" – is invalid.

25          In addition, the ALJ's other stated reasons for his adverse credibility determination are not

26   "specific, clear and convincing," nor are they "supported by substantial evidence in the record" once

27   proper weight is accorded to the opinions of Drs. Baum and Johnson. First, the ALJ asserted that

28   Plaintiff's admitted daily activities were "not limited to the extent one would expect, given the

United States District Court
Northern District of California

complaints of disabling symptoms and limitations." (Record at 19.)   Specifically, the ALJ stated that Plaintiff was "able to manage his own funds, including paying bills, counting change, handling a savings account, and using a checkbook." (*Id*.)   For this fact, however, the ALJ cites to a questionnaire wherein Plaintiff also documented his extreme fatigue, and his inability to complete chores or cook meals. (*See id*. at 174–87.)   The only other evidence cited by the ALJ to support his conclusion that Plaintiff's daily activities were not as limited as alleged was the opinion of Dr. Chen, an examining physician who opined that Plaintiff could "clean his room, wash dishes, do laundry, buy groceries, watch TV, use a computer, read, walk, and keep appointments." (*Id*. at 19.)   The ALJ's reliance on Dr. Chen's opinion is misplaced for two reasons.   First, Dr. Chen's opinion about what Plaintiff *could* do does not bear on the ALJ's assertion concerning Plaintiff's "described daily activities," which the record confirms are as limited as Plaintiff alleged. (*See id*. at 168–187 (Plaintiff's questionnaire responses describing level of impairment), 616 (Dr. Johnson's report noting Plaintiff claimed "marked difficulty in doing any . . . cleaning or household chores"); *see also id.* at 449 (Dr. Baum's statement noting that Plaintiff cannot perform daily tasks of shopping, cooking, cleaning, etc.).)   Second, Dr. Chen's opinion was accorded "reduced weight" by the ALJ because his opinions concerning Plaintiff's physical limitations were found contrary to other record evidence. (*Id*. at 20.)   Specifically, Dr. Mathur, to whom the ALJ accorded "great weight," provided an analysis of Plaintiff's case in which he noted that Plaintiff "can't complete tasks [and] rarely leaves [his] house." (*Id*. at 434.)   In addition, Dr. Mathur noted that on many days, Plaintiff will not shower, get dressed, or prepare food "due to pain and fatigue." (*Id*.)   Thus, even *without* crediting the opinions of Drs. Baum and Johnson, substantial evidence in the record corroborated the degree of impairment to which Plaintiff testified at the hearing.   Upon crediting the opinions of Drs. Baum and Johnson, the record as a whole confirms that Plaintiff's daily activities were as limited as alleged.

Second, the ALJ determined that Plaintiff had collected unemployment benefits as late as July of 2009 and concluded that this "indicates he had the capacity to work." (Record at 19, *see also id.* at 53–54, 596.)   Upon review of the record, the Court finds that this is not a convincing reason supported by substantial record evidence for discrediting Plaintiff's testimony concerning his alleged level of impairment.   Although a claimant's collection of unemployment benefits can undermine

1    Plaintiff's allegations of his inability to work, here Plaintiff's testimony and record evidence

2    contradict that finding.  Specifically, Plaintiff testified that when he received these benefits, "I knew

3    that, at the time, I wasn't physically capable of working . . . but I had no other source of income."

4    (*Id*.)  Indeed, the citation to the record provided by the ALJ for the proposition that Plaintiff was

5    collecting unemployment also indicates that Plaintiff was at that time seeking to obtain disability

6    coverage, which supports Plaintiff's testimony that although he was receiving unemployment

7    benefits, at that time he was unable to work.  (*Id*. at 596.)  These facts, as well as the medical

8    evidence of record, contradict the ALJ's determination that Plaintiff's receipt of unemployment

9    benefits proves that he "had the capacity to work" in 2009.

10          Third, the ALJ noted that Plaintiff had been non-compliant in taking prescribed medications,

11   concluding that this "suggests that the symptoms may not have been as limiting as the claimant has

12   alleged."  (Record at 19.)  The record evidence, however, supports the opposite conclusion.  Insofar

13   as Plaintiff was non-compliant in taking his medications, any non-compliance corroborates

14   Plaintiff's claimed level of impairment.  Plaintiff alleged that due to his HIV medication, he suffered

15   from fatigue and forgetfulness.  (*See id*. at 174.)  As a result, he stated in a written questionnaire that

16   he needed reminders to take his medication and that he would sometimes forget to take it.  (*Id*. at

17   176.)  Other medical evidence of record, including Dr. Baum's two medical source summaries,

18   corroborates Plaintiff's claimed difficulty with concentration and memory loss.  (*Id*. at 449, 598

19   ("Mr. Williams reports side effects [from worsening symptoms of HIV] of severe fatigue, difficulty

20   concentrating, and memory/attention problems."), *id*. at 503, 510, 531.)  Thus, upon review of the

21   record as a whole, the Court finds that the ALJ's conclusion was neither convincing, nor supported

22   by substantial evidence in the record as a whole.[4]

23

24

25   [4] The ALJ also stated that "the claimant was advised to cease his drug use and failed to do so until
     recently."  (Record at 19.)  The ALJ provided no analysis or explanation of how this fact bears on
26   Plaintiff's credibility as to his allegations of disability, nor does the Government argue that this
     statement amounted to a reason upon which the ALJ based his credibility determination.  (*See id.*;
27   Def. Cross-Mot. at 15–19.)  Regardless, substantial evidence in the record establishes that Plaintiff's
     history of stimulant use is immaterial to his symptoms relating to HIV and mental illness.  (*See*
28   Record at 449, 598; *see also id.* at 636–37, 639–40.)

United States District Court
Northern District of California

18

Finally, the ALJ accorded "slight weight" to the fact that Plaintiff demonstrated no evidence of pain or discomfort while testifying and was able to answer questions in an appropriate manner. (Record at 19.)  The ALJ's reliance on his observations of Plaintiff to assess Plaintiff's credibility was proper.  *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).  However, considering this fact in light of the record as a whole, the Court finds that this alone was not a convincing reason supporting the ALJ's decision to discredit Plaintiff's claimed level of impairment.  Dr. Baum, for example, noted that Plaintiff did not appear chronically ill (Record at 546), yet nonetheless opined that he was unable to work due to his chronic symptoms of HIV and mental illness (*id*. at 449–48, 598).  Similarly, Dr. Johnson noted that Plaintiff "was responsive to questions" during an examination, and that "his answers [were] initially relevant."  (*Id*. at 615, 617.)  Notwithstanding these observations, Dr. Johnson opined that Plaintiff would experience marked to extreme difficulties in a vocational setting.  (*Id*. at 618–21.)  Thus, the weight of record evidence establishes that Plaintiff's presentation at the hearing, without more, is not a convincing reason for discrediting his alleged degree of impairment.

For the reasons stated above, the Court finds that the ALJ's adverse credibility determination was in error.  Accordingly, the ALJ's RF Capacity determination was invalid.  Notwithstanding that finding, the Court nevertheless evaluates Plaintiff's three remaining allegations:  (1) that the ALJ erred by failing to consider Plaintiff's anxiety/panic disorder at Step Two; (2) that the ALJ erred at Step Three by finding that the claimant's impairments met or equaled none of the listed impairments; and (3) that the ALJ erred when he relied on a vocational expert's testimony at Step Five.

**B.  The ALJ's Step Two Determination**

Plaintiff argues that the ALJ did not consider his anxiety/panic disorder in the Step Two analysis and that the ALJ's failure to do so constitutes reversible error.  The Court does not agree.

At Step Two of the five-step sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments.  20 C.F.R. §§ 404.1520, 416.920.  If an impairment, or a combination of impairments, significantly limits the claimant's ability to perform a basic work activity and has lasted, or is expected to last, for at least a year continuously, those impairments are considered "severe."  20 C.F.R. §§ 404.1520, 416.920.  In

1    practice, Step Two functions as a screening mechanism to eliminate cases where the alleged

2    disabilities result in impairments so slight that there is no interference with the claimant's ability to

3    work.  *See Bowen v. Yuckert*, 482 U.S. 137, 154 (1987).  If the ALJ erroneously determines that an

4    alleged impairment is not "severe," at Step Two, a reviewing court must assess whether the error was

5    harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Burch v. Barnhart,* 400

6    F.3d 676, 679 (9th Cir.2005) ("A decision of the ALJ will not be reversed for errors that are

7    harmless.").

8         Here, the ALJ did not conclude that Plaintiff's anxiety/panic disorder qualified as a "severe"

9    impairment.  (*See* Record at 16.)  However, the ALJ did determine that other of Plaintiff's

10   impairments were severe:  HIV, Depression, and Drug and Alcohol Abuse in Early Remission.  (*Id.*

11   16.)  Upon finding that Plaintiff suffered from these severe impairments, the ALJ then undertook the

12   entire five-step sequential analysis, wherein he considered the limitations presented in Plaintiff's

13   alleged anxiety/panic disorder.  (*See id*. at 18, 19.)  Thus, even if Plaintiff's anxiety/panic disorder

14   should have been considered severe at Step Two, any error was harmless because the ALJ considered

15   that limitation later in the sequential evaluation process.  *See Lewis*, 498 F.3d at 911 (ALJ's failure to

16   find impairment "severe" at Step Two was harmless because ALJ considered impairment when

17   assessing Plaintiff's RF Capacity).

18        **C.       The ALJ's Step Three Determination**

19        At Step Three, the ALJ considers whether any of a claimant's impairments meet or equal any

20   impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If a claimant's impairments rise to

21   the level of a listed impairment, the claimant is determined disabled.  Here, the ALJ determined that

22   Plaintiff's impairments did not meet or equal any listed impairment.  (Record at 16.)  The Court finds

23   that because the ALJ's Step Three determination was predicated on his improper rejection of medical

24   opinion evidence and Plaintiff's testimony, the ALJ's Step Three determination was in error.

25        In making his determination, the ALJ explicitly referred to and relied on his evaluation of the

26   Plaintiff's testimony and the medical evidence.  (Record at 17 ("Based on the claimant's testimony

27   and the medical evidence, discussed in greater detail below and incorporated herein by reference...");

28   *see also* Def.'s Cross-Mot. at 8.)  The ALJ's finding that Plaintiff's impairments neither met nor

1   equaled the listed impairments was therefore informed by his decision to accord only "little weight"

2   to Drs. Baum and Johnson.  (*See* Record at 17.)  For example, the ALJ found that Plaintiff

3   experienced only "mild restrictions in the activities of daily living, moderate difficulties in

4   maintaining social functioning, and mild difficulties maintaining concentration, persistence or pace."

5   (*Id*.)  However, Dr. Johnson's opinions directly refute these findings.  (*See id*. at 618.)  Dr. Johnson

6   expressly opined that Plaintiff would "have market to extreme difficulties maintaining pace and

7   persistence in even relatively simple tasks."  (*Id*.)  Moreover, Dr. Johnson found that Plaintiff would

8   have "extreme" difficulty interacting with supervisors, and "moderate to extreme" difficulty

9   interacting appropriately with the public, co-workers, or reacting to unusual work situations or

10  changes in work routines.  (*Id*. at 621.)  Thus, it is clear that the ALJ's decision to discredit Dr.

11  Johnson's opinions controlled the outcome of his Step Three analysis.

12          Likewise, the ALJ's decision not to consider Plaintiff's HIV-related symptoms at Step Three

13  was informed by his decision to accord "little weight" to treating physician Dr. Baum's opinion.  Dr.

14  Baum's opinions and records are replete with evidence of Plaintiff's chronic symptoms of HIV,

15  including "full body rashes that are highly resistant to treatment, chronic Staph infections; chronic

16  ulcerating dermatitis, eczema, and abscesses; chronic recurring herpes simplex virus infections; anal

17  dysplasia, bladder infections; gastrointestinal reflux disease, vasculitis, chronic lower back pain,

18  lower extremity swelling, and joint pain resulting in decreased range of movement; chronic fatigue

19  and decreased endurance; and diarrhea with occasional fecal incontinence."  (Record at 449; *see also*

20  *id*. at 210 (listing record citations documenting the many manifestations of Plaintiff's HIV

21  infection).)  In his Step Three discussion, the ALJ does not mention or discuss Listing 14.08(K)

22  (Repeated Manifestations of HIV) at all.  The ALJ's conclusion that Plaintiff did not meet this listing

23  was thus based on his decision to give "little weight" to Dr. Baum's opinions.  (*Id*. at 17 ("Based on

24  the claimant's testimony and the medical evidence, discussed in greater detail below and

25  incorporated herein by reference . . .").

26          The Court recognizes that as long as the ALJ's decision contains "an adequate statement of

27  the foundations on which the ultimate factual conclusions are based," "[i]t is unnecessary to require

28  the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the

United States District Court
Northern District of California

1    listing of impairments." *Gonzalez v. Sullivan,* 914 F.2d 1197, 1200–01 (9th Cir.1990).  Here,

2    however, for the reasons set forth in Section III(C), *supra*, the foundation for the ALJ's Step Three

3    conclusions was itself legal error.  Accordingly, the ALJ's Step Three analysis is invalid.

4              **D.  The Vocational Expert's Testimony**

5              At Step Five, the ALJ relied on the testimony of a vocational expert to determine whether,

6    given Plaintiff's RF Capacity, age, education, and work experience in conjunction with the medical

7    vocational guidelines, jobs exist in the national or state economy that Plaintiff can perform.  (Record

8    at 23.)  The vocational expert opined that given all of these factors, an individual with Plaintiff's

9    qualifications and limitations would be able to "perform the requirements of representative light

10   unskilled occupations within the State of California economy such as a Small Product Assembler ...

11   and Cleaner Polisher."  (*Id.*)  However, this opinion was predicated on the ALJ's erroneous RF

12   Capacity determination.  Therefore, the vocational expert's testimony was not probative on the

13   question of Plaintiff's disability and the ALJ's reliance on this testimony was invalid.

14   **V.    RELIEF**

15             Having found reversible error in the ALJ's decision, most importantly that the ALJ

16   improperly discredited the treating physician's opinion, the examining physician's opinion, and

17   Plaintiff's testimony, the Court now addresses the question of whether to remand for further

18   administrative proceedings or payment of benefits.

19             This Court may remand for an award of benefits only if three conditions are met: (1) the ALJ

20   failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding

21   issues that must be resolved before a determination of disability can be made; and (3) it is clear from

22   the record that the ALJ would be required to find the claimant disabled were such evidence credited.

23   *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)(citing *Harman v. Apfel*, 211 F.3d 1172, 1178

24   (9th Cir. 2004)).  It is the "unusual case" that meets this standard.  *Benecke*, 379 F.3d at 595.

25   Generally, "the proper course, except in rare circumstances, is to remand to the agency for additional

26   investigation or explanation."  *Id.* (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002), *Mosia v. Barnhart*,

27   367 F.3d 882, 886–87 (9th Cir. 2004)).   Here, the Court finds that this extraordinary remedy is

28   warranted.

United States District Court
Northern District of California

22

As to the first prong, for the reasons discussed in Sections III(C)(1) and III(C)(2), *supra*, the ALJ's decision to reject the opinions of Drs. Baum and Johnson was legal error. As such, this Court credits the physicians' opinions "as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Similarly, as set forth in Section III(C)(3), *supra*, the ALJ's decision to reject Plaintiff's testimony was legal error. Accordingly, this Court credits that evidence as true. *See Benecke*, 379 F.3d at 594. The Court now turns to the other two prongs of the *Harman* inquiry and finds that there are no outstanding issues that must be resolved before a determination of disability can be made and that it is clear from the record that the ALJ would be required to find Plaintiff disabled if that evidence is credited. *See id.*

Here, there are no "outstanding issues that must be resolved before a proper disability determination can be made." *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001)(citing *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir. 1988)). There are numerous medical reports in the record and the ALJ held a hearing at which Plaintiff and a vocational expert both testified. Indeed, the ALJ deemed the record sufficiently complete to enable him to render a decision. With the addition of Dr. Baum's two supplemental statements, both considered by the Appeals Council when it determined not to review the ALJ's decision, the record now contains even more evidence than it did when the ALJ rendered his original decision. The record is therefore complete. *See Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993) (citing *Varney*, 859 F.3d at 1399 ("Where the record is complete . . . we award benefits to the claimant.")).[5]

---

[5] Despite the Government's argument to the contrary, there remain no questions of ambiguity as to the medical evidence in this case. (*See* Def.'s Cross-Mot at 21.) The opinion of non-examining, non-treating physician Dr. Mathur, to whom the ALJ accorded "great weight," cannot be credited over the opinions of Plaintiff's treating physician. Dr. Mathur's opinion was not based on independent clinical findings and instead rests on findings also considered by the treating physician. In this instance, it was incumbent on the ALJ to articulate "specific, legitimate reasons . . . based on substantial evidence in the record" for crediting Dr. Mathur's opinion over Dr. Baum's. *See Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995) (citation omitted). As explained above, all of the ALJ's stated reasons for discrediting Dr. Baum's opinion fail to meet this standard. Likewise, the ALJ already determined that Dr. Chen's decision warranted only "reduced weight" based on the fact that his findings did not fully comport with Dr. Mathur's. (Record at 20.) Remanding to the Commissioner to decide the relative weight of medical opinions again "would create an unfair 'heads we win, tail's let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

United States District Court
Northern District of California

The Court finds that based upon the record as a whole, it is clear that the ALJ would be required to find Plaintiff disabled if the medical opinion evidence and Plaintiff's testimony is credited.  Giving the evidence the effect required by law demonstrates that Plaintiff has met or equals the requirements of Listing 14.08(k) (Repeated Manifestations of HIV Infection).  Listing 14.08(K) reads:

> Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A–J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level: 1. Limitation of activities of daily living. 2. Limitation in maintaining social functioning. 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 14.08(K).

Here, Dr. Baum's findings and opinions as well as the medical evidence of record establish that Plaintiff meets or equals these requirements.  (*See* Record at 449 (detailing severity of HIV symptoms, marked limitations on functioning, daily living, and social functioning), 598–99 (same), 636  ("Mr. Williams continues to experience numerous MRSA staph infections requiring hospitalizations.  These staph infections cause multiple ulceration lesions and abscesses, which are painful and markedly interfere with Mr. Williams' ability to concentrate or function.")[6]; *see e.g., id.* at 210–12 (listing medical record evidence of repeated manifestations of HIV symptoms), 494 (documenting MRSA infection), 531 (documenting memory/attention problems, skin lesions,

---

[6] In *Harman v. Apfel*, 211 F.3d 1172, the Ninth Circuit decided that an award of benefits was improper where the ALJ had no chance to consider evidence submitted to the Appeals Council after the ALJ rendered his initial decision.  That holding does not apply to this case.  Here, the statements Dr. Baum submitted prior to the ALJ's decision, Plaintiff's testimony, and the medical records establish that Plaintiff suffered from the symptoms required to meet the listed impairment.  The ALJ considered and rejected this evidence.  Dr. Baum's supplemental statements served to apprise the Commissioner of Plaintiff's worsening condition as documented in Dr. Baum's prior statements.  This Court's finding therefore does not turn on evidence submitted after the ALJ issued his decision.

diarrhea), 532 (documenting skin lesions, fatigue).)  Moreover, Plaintiff testified to these symptoms.  (Record at 48–49 (detailing diarrhea, memory loss), 60–61 (detailing "widespread" skin lesions, chronic MRSA, diarrhea); *see also id.* at 174–187 (questionnaire wherein Plaintiff notes chronic skin infections, diarrhea, fecal incontinence, limitations on daily activities and social functioning).)  Dr. Johnson's finding that Plaintiff would have "marked" difficulty carrying out simple instructions and "marked to extreme" difficulty carrying out complex instructions further supports Plaintiff's claim that he meets or equals this listed requirement.  (Record at 620–21.)  There is no substantial evidence in the record that contradicts Plaintiff's assertion that he suffers from repeated manifestations of HIV and therefore meets or equals Listing 14.08(K) and the durational requirement.[7]

Because the record as a whole establishes that Plaintiff meets the requirements of Listing 14.08(K) and is therefore entitled to a presumption of disability, further proceedings would be futile.  Remand for an award of benefits is proper.  *See Ramirez v. Shalala,* 8 F.3d 1449, (9th Cir.1993) (remanding for payment of benefits where ALJ improperly discredited treating doctor's opinion showing that the plaintiff met an impairment in the Listings).  Moreover, remand for benefits is particularly necessary here, where Plaintiff first applied for benefits over four years ago and has already experienced lengthy, burdensome litigation.  *Vertigan,* 260 F.3d at 1053 (citing *Terry v. Sullivan,* 903 F.3d 1273, 1280 (9th Cir. 1990) (remanding for benefits where the claimant had applied almost four years ago)).

---

[7] The reports of Drs. Mathur and Chen do not contradict this evidence.  Indeed, notations in their reports confirm the existence of these symptoms.  (Record at 434–435 (Dr. Mathur noting chronic fatigue due to HIV, diarrhea, fecal incontinence occasionally, skin lesions), 624–625 (Dr. Chen noting that Plaintiff "has symptoms of diarrhea, skin rash, blisters, anal dysplasia, impetigo, symptoms of fatigue and lethargy").)  The reports of Drs. Chen and Mathur also do not contradict the other evidence of record that establishes Plaintiff's marked limitations in social functioning and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  Although Dr. Chen opined that Plaintiff can complete daily activities, this finding is contrary to substantial evidence in the record.  Moreover, uncontroverted record evidence establishes that Plaintiff suffers from marked limitations in social functioning and in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace.  Thus, the requirements of Listing 14.08(K) have been met.

United States District Court
Northern District of California

**VI.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.  This case is hereby **REMANDED** for an award of benefits.

**IT IS SO ORDERED**.

Date: March 6, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**